horn, for the reason that a horn, if blown, would not have been available, on such a night, to give any useful notice to the steamer. It is proved by the claimants to have been clear weather at 7½ p. m., when the steamer passed the lightship, the wind then blowing from the south and west, and freshening. At 10½ p. m. it was blowing heavily from south-southwest, and by 2 p. m. blew from north-northwest. At the time of the collision rain was falling, according to the evidence for the steamer, and the wind south-southwest. These circumstances are calculated to raise doubts as to the night being one to be properly termed foggy, but there is no doubt that it was a bad night. "About as bad a night as I ever saw," says the engineer of the steamship. The value of the fog horn signal must depend upon the weather, and the obligation to blow it cannot attach, if it be clearly shown that there were attending circumstances which would render it a useless precaution.

Doubts have been expressed as to the ability to hear a fog horn on a steamer at any time when the steamer is in full motion (The Bay State, 18 How. [59 U. S.] 92), but the truth I take to be that it depends upon circumstances whether the horn can be made of use. Under some circumstances, a hail even can be heard at a long distance by attentive ears on a steamer in full motion. Under other circumstances, a loud horn cannot be heard. On this occasion the night was undoubtedly boisterous. The evidence shows that the loudest hails made after the collision by those on the wreck, whose lives were apparently dependent on making themselves heard, failed to reach the steamship, although she must then have been near by, and at times still. The loud hails of the chief mate of the steamship directed to those on the wreck, were also unheard by them. They could not even hear the whistle and the blowing steam, both of which sounded loudly after the accident. These circumstances show quite plainly, to my mind, that a fog horn, if blown on the schooner, would have been of no use. The whistle of the steamer, which is shown to have been blowing while the schooner was approaching, was of no use, for it was not heard by the hands on the schooner till the steamer was on the point of striking them.

My conclusion, therefore, is that the schooner cannot be held guilty of fault for omitting to blow a fog horn, and that the steamship must be held solely responsible, because of her unlawful speed.

[A final decree awarding the libelant $10,849.41 damages and $416 costs was entered December 5, 1871. The case was again heard upon a question of taxation of witnesses' fees in Case No. 8,252. An appeal was taken by the claimant, and the decree above reversed by the circuit court on the ground that both vessels were in fault. An apportionment of the damages was ordered. Id. 8,254. The case was again heard upon a libel of the seamen for wages. Id. 8,253.]

## Case No. 8,252.

### The LEO.

[5 Ben. 486.] [1]

District Court, E. D. New York. Jan. Term, 1872.

WITNESS FEES — TRAVEL FOR MORE THAN A HUNDRED MILES.

Travel fees for a witness subpoenaed out of the state can only be taxed for a hundred miles.

[Cited in U. S. v. Sanborn, 28 Fed. 304; Buffalo Ins. Co. v. Providence & Stonington S. S. Co., 29 Fed. 237; The Vernon, 36 Fed. 116; Burrow v. Kansas City, Ft. S. & M. R. Co., 54 Fed. 282; Pinson v. Atchison, T. & S. F. R. Co., Id. 465.]

[This was a libel by the owners of the schooner Saxon against the steamship Leo for damages on account of collision. There was a decree in favor of the libelants. Case No. 8,251. The case is now heard upon the question of witness fees.]

BENEDICT, District Judge. The appeal from the clerk's taxation of witnesses' fees in the case raises the question, whether, as against the adverse party, traveling fees of a witness subpoenaed out of this state for a greater distance than one hundred miles can be taxed. The point has been decided by Mr. Justice Nelson, and the practice in the Southern district, in conformity with that decision, is to tax traveling fees for no greater distance than the subpoena would run, which is a distance of one hundred miles from the place of trial out of the district. The practice in this district must conform to the same decision, and accordingly the appeal in this case is sustained, and a retaxation must be had in accordance with this opinion.

## Case No. 8,253.

### The LEO.

[8 Ben. 506.] [2]

District Court, E. D. New York. July. 1876.

COLLISION—STALE CLAIM—LACHES—SEAMEN'S EFFECTS.

1. The owners of a schooner filed a libel against the steamship Leo, owned by a corporation, to recover for her loss by collision. Before the trial of the cause, libels were filed against the Leo, on behalf of the seamen on the schooner, to recover for the loss of their effects by the collision. No process was issued however on these libels until nearly five years thereafter, during which time the suit of the owners had been carried by appeal to the supreme court of the United States, which had held both vessels in fault. After such decision processes were issued on the seamen's libels against the steamship, which still continued to be owned by the same corporation, although nearly all its stock had in the meantime been transferred to other hands: Held, that, if the libellants were ordinary persons, or if the libels had not been filed within a reasonable time, the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.].

[2] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

claims would have been held to be lost by neglect to prosecute: but. the libellants being seamen, it was the duty of the court of admiralty to prevent their losing their claims by reason of the negligence of their proctor, if it could be done without injustice.

2. No injustice would be done here by a decree in favor of the seamen, as the claimants were the same and were chargeable with knowledge of the fact of the loss of the seamen's effects.

3. The transfer of the stock of the corporation made no difference, for it could not be supposed that such claims as these could have made any difference in the value of the stock.

4. The seamen therefore must have a decree for half their damages without interest or costs.

In admiralty.

Beebe, Wilcox & Hobbs, for libellants.
John Sherwood, for claimants.

BENEDICT, District Judge. These are actions by the crew of the schooner Saxon to recover of the steamship Leo the value of their clothes lost in a collision between those vessels, which occurred in November, 1869. The merits of this collision first came before this court upon a libel filed by Jed. Frye, the owner of the schooner. That case [Case No. 8,251] was tried on the 4th of March, 1871. The libels in these causes were filed on February 28th, 1871, after the filing of the libel of Frye and before the trial of that case. But no process was then issued upon such libels, or other proceeding taken in these causes until December 28th, 1874. During this period the question as to the liability of the Leo for the collision in question was pending before the courts, the case of Frye having been taken by appeal to the supreme court,[2] where the collision was held to have resulted from negligence on both the schooner and the steamer. Shortly after the final decision as to the question of liability, demand was made for the payment of these claims of the crew for their clothes; and the same being refused, process was then issued upon the libels which had been filed some five years before. The steamship, having been seized upon such process, now defends upon the ground that these claims are stale.

As to the question of fact upon which any liability depends, it has been assumed that the decision thereof in these cases will follow the opinion as to the fact expressed by the supreme court in the action brought by Frye, inasmuch as by consent the evidence in that case has been made the evidence in these cases.

The only question then is whether the libellants have lost their rights by laches. If the libellants were ordinary persons, or if these libels had not been filed within a reasonable time, there would be no doubt that these claims should be held to have been lost by neglect to prosecute. But the libellants are seamen. In due time they placed their demands in the hands of a proctor, and

they swore to their libels, which were then filed. Moreover, they knew that the question of the liability of the steamer was before the court undetermined, for they were witnesses; and they may well have supposed that their rights were dependent upon the proceeding which they knew to be pending. The omission to make enquiry as to their actions, and to ascertain that process had not been issued upon their libels, cannot therefore be imputed to seamen as negligence. They had done all that was to be done by them, and they cannot justly be compelled to lose their claims, by reason of the neglect of their proctor sooner to move for process. In behalf of seamen in such a case, it is the duty of a court of admiralty to prevent the loss of their claims by the negligence of their proctor, if it can be done without injustice. Here no injustice will arise, for the claimants are chargeable with the knowledge that the seamen's clothes were lost with the vessel. The liability of the steamship is no greater now than it would have been had the processes been issued, and these causes tried with the case of Frye. The proof, that a considerable part, but not all, of the stock of the corporation, which owned the steamer at the time of the accident and still owns her, has been sold since the accident to persons having no knowledge of this demand of the crew, does not change the case. The same corporation is the claimant before the court, and it cannot be supposed that any difference in the value of the stock of that corporation would be caused by demands such as these under consideration.

There must therefore be a decree for the libellants for one-half the value of the property set forth in the libels, which may be proved to have been lost, without interest or costs. A reference can be had to ascertain the amounts, if that be not agreed to, in which case the costs of the reference will be left to be determined upon the coming in of the report.

[NOTE. There is no report of either of these cases in the supreme court, and an examination of the supreme court docket fails to show any such case having been docketed. The records of the circuit court show that on October 2, 1873, a petition and bond on appeal were filed, but the proceedings appear to have been carried no further. In Case No. 8,254 the circuit court held (reversing Case No. 8,251) that the collision was the result of negligence of both vessels.]

---

## Case No. 8,254.

### The LEO.

[11 Blatchf. 225.][1]

Circuit Court, E. D. New York. July 2, 1873.[2]

COLLISION — STEAMER AND SAIL VESSEL — THICK AND STORMY—FULL STEAM—LOOKOUT—DUTY OF SAIL VESSEL TO BLOW FOG-HORN.

1. In a dark, thick and stormy night, and against a strong wind, a head sea, and the tide,

---

[2] [See Case No. 8,254 and note at end of this case.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Reversing Case No. 8,251.]